E. GRADY JOLLY, Circuit Judge,
dissenting:
I respectfully dissent because deference is not due the Medicare Appeals Council’s unreasonable and inequitable interpretation of the regulations at issue.
I.
While acknowledging the risk of redundancy, the key facts bear repeating. This protracted litigation has spanned an incredible twenty-two years, beginning in 1988 when the plaintiffs first challenged their Medicare reimbursement before a Regional Administrator for the Health Care Finance Administration. They challenged two aspects of their reimbursement: the rate paid per collected specimen, and the rate paid for travel to collect samples. After two abortive attempts to bring suit, the plaintiffs began their journey through the labyrinth of agency review.
In 1992, an administrative law judge (ALJ) agreed with the plaintiffs that there was no evidence to support the travel rate or the specimen rate and calculated an amount owed to the plaintiffs. The Medicare Appeals Council vacated and remanded. Again, in 1993, the ALJ found for the plaintiffs; again, this ruling was vacated and remanded. In 1995, a different ALJ again found in favor of the plaintiffs; yet, this ruling was reversed by the Appeals Council. This last reversal was appealed to the Northern District of Texas, which found against the plaintiffs. We reversed and the same case was remanded to another ALJ. In 2003, the ALJ also found for the plaintiffs, still again; the Appeals Council finally let stand the aged relief granted the plaintiffs.
In 2003, the Department of Health and Human Services paid the plaintiffs’ judgment plus two months’ interest for some fifteen years’ use of the plaintiffs’ money. The plaintiffs obviously disagreed with the interest calculation and challenged it before the ALJ. The ALJ rejected the challenge; on appeal, the Appeals Council found no additional interest was due. The plaintiffs appealed to the district court, which dismissed for lack of standing; this dismissal was reversed on appeal to our court; we again remanded to the district court for adjudication on the merits. The district court granted HHS summary judgment, holding it did not owe further interest. That is the decision before our court. The plaintiffs contend interest should run from 1992 when the first ALJ issued a written opinion in their favor; the government contends that it owes only two months’ interest from 1988 through 2003. The majority, operating on automatic, nods to the Appeals Council’s discriminatory and self-serving new interpretation of the regulations.
II.
Under the regulations issued by the Health Care Finance Administration (now called the Centers for Medicare and Medicaid Services [CMS]), interest accrues from the date of “[a] written determina *780 tion of an underpayment” “[e]xeept as required by any subsequent administrative or judicial reversal.” 42 C.F.R. § 405.378(c) (emphasis added). A -written determination issued in 1992; no subsequent administrative or judicial reversal required a different interest date for the award, as upheld. Thus plaintiffs’ proffered reading of this regulation — that interest began running in 1992, when they were first awarded a written determination of underpayment by the ALJ — is undoubtedly correct.
In contrast, the Appeals Council’s interpretation' — that interest only began running some 15 years later in 2003, when the plaintiffs obtained their last administrative determination of underpayment — is not only erroneous but makes a regrettable policy choice that serves to reward agency delay and abuse. This arbitrary position cannot be considered consistent with the regulation nor with Congress’ intent in allowing interest. As HCFA explained in its response to notice-and-comment for § 405.378,
One area of concern in developing these regulations involved the point at which a final determination occurs and interest begins to accrue. One approach in defining a final determination is the point after which all administrative and judicial avenues of appeal have been exhausted. We believe this approach is inconsistent with congressional intent to impose interest since it would encourage appeals simply to avoid or delay the payment of interest.
Medicare Program; Interest Charges on Overpayments and Underpayments to Providers and Suppliers of Services, 47 Fed.Reg. 54811-01, 54812 (December 6, 1982) (emphasis added). Here, although the Appeals Council’s interpretation avoids exhaustion, it nonetheless defies congressional intent by encouraging appeals “simply to avoid or delay the payment of interest.” This case only too well proves that point: had it not been for the agency’s three administrative appeals, each of which arose from the agency’s groundless claim that evidence existed to support its travel-allowance-calculation methodology, there would be no question that interest began to accrue in 1992. Plainly said in street language that all such victims understand, the bureaucracy has been “jerking the plaintiffs around” — and we should not sanction an unreasonable, self-serving, and tendentious interpretation of the regulations that enables such abusive behavior.[1]
The majority accepts the Appeals Council’s shallow explanation that the mixed nature of the 1992 administrative judgment somehow justifies interest not accruing from that date. But there is no logic to this argument. There is no reason established in the regulations as to why interest should not run on the favorable portion of the award; the majority, lacking any recognized basis for its arbitrary position, must retreat to a reference that is merely the agency’s comment during the rulemaking process.[2] Although the major *781 ity argues that the debt must be established, let me remind the majority that the obligation of the government was established in 1992; the ALJ judgment was only modified when upheld on appeal. The majority’s interpretation frustrates the purpose of interest accrual: to make sure plaintiffs are compensated for the time value of money owed to them.
Furthermore, the Appeals Council’s interpretation is not only unreasonable but it is discriminatory and inequitable. Under 42 C.F.R. § 405.378(e)(1), interest on an overpayment runs against a provider “during periods of administrative and judicial appeal and until final disposition of the claim.” This provision, of course, means that if the ALJ had ruled in favor of HHS in 1992 (and if HHS had ultimately prevailed), the plaintiffs would owe over 20 years’ interest. But rather than read 42 C.F.R. § 405.378(c)(ii)(B) in pari materia with this section, the Appeals Council reads it to exempt the agency from such an obligation that it imposes on others.[3] It is fundamentally inexcusable to treat providers and the agency so differently with so little justification and for the reasons I have indicated herein, we owe no deference to this arbitrary and capricious interpretation.
For these reasons, I respectfully dissent.

. As the Supreme Court has made plain, an administrative rule or regulation is arbitrary and capricious when "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

. Even then, the majority does not treat all such comments equally. The majority cites with favor the agency’s statement that "[t]he amount of [a] debt must be established before it becomes due and payable and thus subject to interest,” 56 Fed.Reg. 31332, 31335 (July 10, 1991), but conveniently ignores the agency’s statement "that [starting interest accrual after exhaustion of all avenues of appeal] is *781 inconsistent with congressional intent ... since it would encourage appeals simply to avoid or delay the payment of interest,” 47 Fed.Reg. 54811-01, 54812 (Dec. 6, 1982).

. Although the majority attempts to find refuge in sovereign immunity, the government only argued that sovereign immunity requires that we read the entire regulation narrowly; the government never argued what the majority asserts today; that sovereign immunity entitles the agency to interpret the phrase "final determination” at its pleasure, thus entitling CMS to collect interest on the one hand and deny it on the other. There is certainly no statutory basis for this rank discrimination.